In the Matter of JOINT DISEASES NORTH GENERAL HOSPITAL, Tax Debtor.

Supreme Court, Albany County, December 2, 1988

## APPEARANCES OF COUNSEL

*Basil A. Patterson* for tax debtor.

## OPINION OF THE COURT

LAWRENCE E. KAHN, J.

This proceeding seeks judicial approval of a proposed compromise of the tax, penalty and interest due from Joint Diseases North General Hospital (North General) for unpaid New York State withholding taxes pursuant to section 171 (fifteenth) of the Tax Law. North General is a hospital located in Harlem, New York City, and serves a predominately poor minority community. It is a 200-bed not-for-profit voluntary teaching hospital which employs over 2,000 individuals. It was established in 1979. It has failed to pay withholding taxes for the years 1980, 1981, 1983, 1984, 1985, 1986, and for a portion of 1988. Thus, since its inception, it has been delinquent on an almost continuous basis. The total amount of the hospital's liability is acknowledged to be $16,173,494.21. In the present proceeding, it is represented by Basil A. Patterson, Esq. He has succeeded in obtaining the Tax Commission's approval to seek a compromise of the amount owed for the sum of $250,000.

A preliminary issue has arisen from the Tax Commission's position that this proceeding must be conducted in secrecy. It contends that section 697 of the Tax Law prohibits the court from divulging any of the facts of the proceeding presently before it. It has suggested that failure to maintain the proceeding in secrecy may constitute criminal activity pursuant to section 1825 of the Tax Law.

The Commission absolutely misapprehends the above provision as well as the function of the judiciary in a democracy. As this court stated over a decade ago, "[o]ur system of justice has been built upon the concept that matters which take place in our courts shall not be shrouded in secrecy, but rather shall be open to public scrutiny and examination. * * * Secrecy in court proceedings can only lead to speculation and distrust in the judicial process. Truth, accuracy and integrity can only flourish in an open legal process." *(Matter of O'Connell,* 90 Misc 2d 555, 556-558.) This rationale is grounded in section 4 of the Judiciary Law which mandates that all

proceedings must be open, except in limited instances not applicable hereto. The courts have long recognized that the principles of an open judicial system are founded on "the public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice." *(Lee v Brooklyn Union Publ. Co.,* 209 NY 245, 248.) Indeed, this issue has been squarely faced in a recent opinion directly involving the Tax Commission wherein the Appellate Division determined that the provisions of section 697 do not prohibit disclosure of the fact that tax returns had not been filed. The court specifically held that "disclosure of the fact that no return was filed does not discourage voluntary compliance, but actually encourages it." *(Kooi v Chu,* 129 AD2d 393, 395.) Further, in litigation involving facts strikingly similar to the case at bar, the Appellate Division made no reference to any requirements of secrecy, referred to the petitioner by name, rather than by a pseudonym, and recited facts in its opinion detailing precisely the amounts of tax allegedly owed and the years that same were willfully not collected or paid *(see, Matter of Allen v State Tax Commn.,* 126 AD2d 51).

The rationale against a clandestine proceeding is further bolstered by the statute itself which requires that in compromises over $25,000, a Supreme Court Justice must review and approve same. This indicates the Legislature's intent to remove substantial compromises of taxpayer dollars from the inner and unseen workings of the Tax Commission, and place it under the full glare of public scrutiny in an open judicial process. The taxpayers have a right to know what happens to their moneys and a tax compromise of this nature is an extraordinary proceeding which affords favored tax status, not only to the hospital, but to the *individuals* who are directly responsible for withholding and payment. It directly impacts on every other employer and taxpayer in the State of New York, who would ultimately be called upon to subsidize this proposed compromise.

The court is certainly mindful of the desire to provide appropriate medical treatment and facilities to those less fortunate members of our society. It certainly may take judicial notice of the impoverished conditions and deterioration of the area surrounding North General Hospital. It is also aware that on March 31, 1988 the Governor authorized an expenditure of $150,000,000 to build new facilities for North General Hospital. The submissions before the court indicate that this

is the largest private building program ever conducted in Harlem and purportedly will enable the continuation of high quality care and the providing of essential services to the residents. While the court is not privy to all of the facts which resulted in this expenditure, it seems elementary that commitment of funds for new buildings does not solve the apparently continuous and ongoing inability of the hospital to comply with the lawful mandate that it fulfill its fiduciary obligations by properly withholding and paying taxes due the State of New York from the wages of its employees. The court further notes that the submissions indicate that the hospital has failed to pay pension and employee benefit fund payments of $3.6 million!

In what can only be described as a state of fiscal anarchy, the Tax Commission's submissions to this court assert that use of normal enforcement techniques has been ruled out because of the potential to jeopardize the health and welfare of the hospital's patients. It has further determined that neither the hospital's president nor the director of finance should be put through the normal administrative hearing process, and that North General's status as a nonprofit corporation renders it practically immune from distribution of its assets to anything other than another nonprofit organization. Thus, with a wink, a nod and slap on the wrist, those responsible are to be sent on their way. It appears that the remedy is a "paper" admonition and a reward of $150,000,000 to build a new facility. Nowhere do the submissions indicate why North General was allowed to remain out of compliance practically since its inception, and not only with respect to withholding taxes, but also with respect to pension and employee benefit funds.

■ The Commission has submitted an itemization of other instances where offers of compromise have been approved by a Supreme Court Justice. While not binding in this court, and for reference purposes only, the court notes that the largest amount compromised is approximately $560,000. Most of the compromises are well below $100,000. Further, the submissions indicate that when this statute was originally enacted in 1936, the then Commissioner of Taxation and Finance agreed that compromises would only be permitted "when the tax debtor has been wholly divested of assets". In the case at bar, nothing of the kind has been suggested, particularly with respect to those individuals who are responsible for the nonpayment. While *Matter of Allen (supra)* stands for the proposi-

tion that the Tax Commission has the discretionary power to waive, reduce or compromise, it must do so in a rational manner and upon a record which supports its determination. There is literally nothing before this court which would support the proposed compromise or absolve the individuals directly responsible (both at the hospital and within the Tax Commission itself) for allowing noncompliance to continue for such an extended period of time and for such an incredibly large sum of money. Indeed, one could reach the conclusion, looking at the totality of the situation, that the Tax Commission, over the years, has attempted to subsidize North General. If the hospital is unable to function financially as a not-for-profit corporation, bankruptcy may be the appropriate remedy *(see, Matter of Allen v State Tax Commn., supra).* However, this court cannot insulate the individuals responsible, no matter how essential the services. If a municipally run institution is the only alternative, then that issue must be addressed directly, rather than by subterfuge which only serves to undermine the legitimate functions of government and establish a horrendous precedent for other individuals faced with similar financial shortfalls.

Responsible fiscal officers of a corporation can be held personally subject to tax penalties *(see, Matter of Levin v Gallman,* 42 NY2d 32, 34). It is readily apparent in the case at bar that nonpayment was willful, in that it was "something more than accidental non-payment."

The standard applicable to the proposed compromise is whether the Commissioner's proposal has a rational basis *(see, Matter of Grace v New York State Tax Commn.,* 37 NY2d 193). This court can find no rationality in the proposal before it, based upon the facts presented, including the unreasonable length of time noncompliance has been allowed to continue, not only with respect to withholding taxes, but also with respect to pension and employee benefit fund payments; the exorbitant amount owed; the nature of the unpaid taxes; the violation of the fiduciary trust responsibility of hospital officials; the potential criminal nature of the failure to comply; and the unfair and untenable posture the compromise would place on the Tax Commission and other taxpayers similarly situated now or in the future.

The application shall be denied.