(March 27, 1989)

■ In the Matter of JOINT DISEASES NORTH GENERAL HOSPITAL. DEPARTMENT OF TAXATION AND FINANCE OF THE STATE OF NEW YORK, Appellant.—Yesawich, Jr., J. Appeal from an order of the Supreme Court (Kahn, J.), entered March 1, 1989 in Albany County, which denied the application of the Department of Taxation and Finance for approval of a proposed compromise of taxes pursuant to Tax Law § 171 (fifteenth).

Joint Diseases North General Hospital (hereinafter North General), a 200-bed not-for-profit facility serving the central and eastern portions of the Harlem community in New York City, has experienced financial difficulty since its inception in 1979. North General's financial statements for the years submitted disclose annual deficits in the area of $2 million in 1980, 1985 and 1986, and although the hospital generated a positive cash flow of over $500,000 in 1987, in the first half of 1988 it was showing a deficit of $879,909. As a result of these cash-flow shortfalls, North General has been persistently remiss in paying taxes and other obligations. Beginning in 1981, the Compliance Division of the Department of Taxation and Finance initiated efforts to bring North General into voluntary compliance with respect to a past-due withholding tax liability of over $1.4 million. Though these efforts resulted in the collection of approximately $1.1 million in delinquent taxes, as well as all amounts due for 1982, thereafter payment of withholding taxes again lapsed until March 1988, allowing a withholding tax liability of $16,173,494.21 to accumulate, nearly $8 million of which is interest and penalties. During the remaining months of 1988, North General was able to pay its current withholding tax obligation by adherence to a trust account agreement.

A salutary aspect of North General's future is the authorization by the State of a $150 million bond offering underwriting the construction, said to begin this spring, of a new hospital (North General currently rents its facility). To stave off bankruptcy, which would jeopardize, among other things,

the building bond,[1] North General, pursuant to Tax Law § 171 (fifteenth), offered to compromise its tax debt for $250,000 and the Commissioner of Taxation and Finance accepted the proposal. As required by the statute, the Commissioner sought to obtain approval of the recommended compromise from a Supreme Court Justice. Supreme Court denied the request, allowed the application to be renewed upon the submission of additional material, but nevertheless adhered to its initial ruling. In doing so the court expressed dismay at the reward the compromise would bestow upon North General for what the court deemed mismanagement, at the laxity of the otherwise zealously proficient Department in permitting the delinquency to grow to such enormous proportions, and at the dangerous signal countenancing the compromise would send to other financially troubled not-for-profit corporations. In addition, Supreme Court was of the view that Tax Law § 171 (fifteenth), by its terms and legislative history, contemplated compromise only for a taxpayer who had "reached 'the end of the line' " whereas this compromise is directed at ensuring the taxpayer's continued vitality. This appeal ensued. North General was granted leave to file an *amicus curiae* brief. Because of a sunset provision in the bond authorization, our review has been expedited.

At the outset it is necessary to address whether this court has jurisdiction to review Supreme Court's determination. Although ex parte orders are not appealable as of right (CPLR 5701 [a] [2]; *Matter of McKee v Coughlin,* 142 AD2d 798), the Commissioner suggests that this order may be reviewed pursuant to CPLR 5704 (a) as was done by this court in *Matter of Martin v Hunt* (40 AD2d 571).[2] As in that case, here there is no "adverse party" as contemplated by CPLR 5704 (a), seemingly taking such orders out of the purview of the statute, a view held by the Second Department *(Matter of Cooperman,* 59 AD2d 749) but presumably rejected by the Fourth *(Matter of Halligan,* 46 AD2d 170); the First Department for its part reviews such cases in the context of a CPLR article 78 proceeding *(Matter of Association for Preservation of Freedom of*

---

1. North General's president avers that none of the $150 million authorized may be used to pay back taxes.

2. CPLR 5704 (a) is concerned with the review to be accorded ex parte orders. Unlike our concurring colleagues, we do not read the statutory phrase "without notice to the adverse party" as necessarily precluding review of an ex parte order in those instances where an adverse party is lacking; hence, we find it unnecessary to confront North General's suggestion that review is available under this court's constitutional power.

*Choice v Simon,* 11 AD2d 927, *affd* 9 NY2d 376). Given the uncertainty as to how a nonadversarial statutory application of this kind may be reviewed, we are disposed to abide by *Matter of Martin v Hunt (supra);* this not only has the virtue of departmental consistency, but also does not punish the present litigant for the Legislature's and the courts' failure to resolve this long-standing procedural dilemma. Accordingly, we will treat this appeal as an application by the Commissioner for review pursuant to CPLR 5704 (a).

Turning to the merits, the sole issue before Supreme Court in reviewing a compromise pursuant to Tax Law § 171 (fifteenth) is whether the Commissioner exceeded the authority granted to him by that statute, which requires that compromises only be effected (1) where the taxpayer is bankrupt or insolvent, and (2) where the amount of the compromise is not less than the amount otherwise recoverable in legal proceedings. The Commissioner argues first that Supreme Court erred in applying a "rational basis" standard of review in examining these factors; we disagree. Judicial scrutiny is adrift if it lacks a defined scope of review, be the standard beyond a reasonable doubt, clear and convincing, a preponderance of, or substantial evidence. The rational basis test is appropriate not only because it is the one traditionally applied to analogous administrative determinations *(see, Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 195-196), but also because in the absence of a statutory evidentiary standard to guide the exercise of judicial power, judicial restraint dictates that resort be had to the least demanding evidentiary level yet one that is more than a merely ministerial level of review *(cf., Matter of Association for Preservation of Freedom of Choice v Shapiro,* 9 NY2d 376, 382).

The question then is whether any facts or reasonable inferences from the facts support the statutory criteria *(see, Matter of Grace v New York State Tax Commn., supra).* Clearly, North General is insolvent. Financial statements prepared by Touche Ross & Company, an independent auditor, disclose large negative cash flows in 2½ of the last 3½ years resulting in a multimillion dollar negative net worth. The latest year for which that figure is available, 1987, ended with liabilities exceeding assets by over $13.6 million.[3] While we share Su-

---

**3.** This would appear to leave North General with a nearly $3 million surplus following the tax compromise, but that is not in fact the case for the Touche Ross reports do not include the interest and penalties due on North General's delinquent taxes as a liability. Hence, North General will be insolvent even if the compromise is validated.

preme Court's view that the plain intent of the statute is to afford relief only when the taxpayer is a failed economic entity (see, mem of Tax Commissioner, Apr. 28, 1936, Governor's Bill Jacket, L 1936, ch 427), here there is sufficient evidence that North General is as close to bankruptcy as possible without actually embarking upon it.

More troublesome is whether no more than $250,000 can legally be recovered from North General. Although North General rents its building, its most recent financial statement lists among its assets over $4.7 million in movable equipment. But that figure includes depreciation and amortization approaching $3 million. In addition, over $1 million worth of that equipment is computer and communications equipment which is leased under capital lease arrangements. Finally, it was asserted positively on oral argument that many items such as hospital beds have low resale value such that their fair market value is less than the depreciated book value. Further analysis is unnecessary for the Assistant Attorney-General, speaking on behalf of the Commissioner, declared that North General is "judgment proof".

Much as we would have infinitely preferred to hear from an opponent or some entity not wholly uncritical of the recommended compromise (and perhaps this is a course the Legislature should consider adopting in the future), the fact remains that this is a legislatively sanctioned uncontested proceeding in which the evidence is not controverted, nor groundless on its face or by reason of any information peculiarly within the knowledge of the court, and one wherein the Commissioner has presumptively acted with regularity and within the authority delegated to him by the Legislature; consequently, we are bound to approve the compromise. Our approval is not intended in any way to exonerate those officers of North General who may be liable for all or part of the compromised amount (see, Matter of Allen v State Tax Commn., 126 AD2d 51).

Appeal converted to an application for review pursuant to CPLR 5704 (a), application granted, order vacated and compromise approved, without costs. Kane, Mikoll and Yesawich, Jr., JJ., concur.

Mahoney, P. J., and Harvey, J., concur in a memorandum by Mahoney, P. J. Mahoney, P. J. (concurring). We agree that the order must be vacated and the compromise approved but write separately to explain the bases for our view. As to the procedural posture of this matter, we do not believe that an

appeal from the ex parte order lies as of right (CPLR 5701 [a] [2]; *Matter of McKee v Coughlin,* 142 AD2d 798). We also reject the availability of review under CPLR 5704 (a) since there is no adverse party as contemplated by the statute. To the extent that this view is contrary to our holding in *Matter of Martin v Hunt* (40 AD2d 571), we would overrule that holding. We do believe, though, that review is available under our constitutional grant of "all the jurisdiction and powers that are vested in the Supreme Court" *(Matter of Association of Bar,* 222 App Div 580, 585; *see,* NY Const, art VI, § 4). Since the Legislature has given Supreme Court the power to approve compromises such as that proposed here (Tax Law § 171 [fifteenth]), we also have such power. Accordingly, the appeal should be converted into an initial application for our approval.

On the merits, we disagree with the majority and Supreme Court that a rational basis standard of review is appropriate. In an analogous uncontested, nonadversarial application for Supreme Court approval where, as here, there was no legislative direction as to the standard of judicial review, the Court of Appeals held that judicial inquiry was limited to whether statutory requirements were met *(Matter of Association for Preservation of Freedom of Choice v Shapiro,* 9 NY2d 376, 381-382). Applying this limited review, it is evident that the statutory requirements of Tax Law § 171 (fifteenth) have been satisfied since the record establishes that the hospital is insolvent and the compromise amount is not less than an amount otherwise recoverable in legal proceedings. There is simply no occasion for the court to consider the rationality or advisability of the proposed compromise. Therefore, we would vacate the order and approve the compromise. *[See,* 142 Misc 2d 165.]