■ In the Matter of BABY GIRL W. MARY V. KOHN-PREISS et al., Appellants.—Order reversed on the law and facts without costs and petition granted. Memorandum: The standard to be applied when reviewing a petition for adoption is the best interests of the child *(Matter of Donald U.,* 105 AD2d 875, *lv dismissed* 64 NY2d 603; Domestic Relations Law § 116 [4]). It has been held that a child should be removed from its adoptive home "only if the adoptive home is clearly and drastically below commonly accepted standards for adoptive placement; if the child's development into normally adjusted adulthood appears, in the light of generally agreed wisdom as to the welfare of children, seriously endangered; and if there is available parenting for the child which meets those standards and erases that specter of danger" *(Matter of Infant H,* 69 Misc 2d 304, 309). We find in this record insufficient proof that the child's best interests would be served by removing her from the adoptive home and, therefore, we reverse the order entered below.

The child who is the subject of this proceeding was born out of wedlock on December 30, 1985. She was received by peti-

tioners through a private placement on January 4, 1986, and has been with them ever since.

During the preadoption investigation, social workers discovered that information given to them by petitioners was not accurate. Petitioners misrepresented their educational backgrounds, their employment histories, and their financial condition. They equivocated when asked to explain these discrepancies during hearings held by the court. While such conduct will not be condoned, we do not conclude from this record that petitioners' shortcomings are such that the child's best interests will be jeopardized or her development will seriously be endangered. The child is loved and cherished by petitioners and their families, she is provided adequate medical care, and is well fed and clothed; the adoptive home, in our view, and contrary to the finding by the Surrogate, is totally adequate. There can be no doubt that the child considers petitioners to be her parents. In our view, removal of the child from the adoptive home at this time might well seriously endanger her development.

In our view, the petitioners' character flaws are offset by their proven ability to care for the child, and respondent has failed to present proof that the child's future development is seriously endangered. Our dissenting colleague misconstrues our holding when she states that we would not have the trial court consider whether the adoptive parents are capable of caring for the child in the future. Although that is certainly a factor to be considered, in our view respondent failed to establish that petitioners' demonstrated character defects render them incapable of raising a well-adjusted child.

The courts have not demanded perfection in adoptive parents. In *Matter of Donald U. (supra),* the court observed that despite certain imperfections assigned to the adoptive father, the child was healthy and happy and, in the interests of stability, approved the adoption. Likewise, in this case, although petitioners are by no means perfect, the child is healthy, happy and loved, and her adoption by petitioners should be approved.

All concur, except Pine, J., who dissents and votes to affirm, in the following memorandum.

Pine, J. (dissenting). I respectfully dissent and vote to affirm for the reasons stated by the trial court. After five days of hearings, during which petitioners had the opportunity to explain the many troubling inconsistencies about their financial, educational and employment histories revealed in the

court-ordered investigation into the propriety of their proposed private adoption of Baby Girl W., the court in a thoughtful decision wrote that it could give no credence to the testimony of the proposed adoptive parents. It also found that petitioners were "either unable or refuse to acknowledge errors, mistakes or misjudgment in the past and in addition, do not appear to understand the import of their actions in our structured society."

The trial court recognized its obligation to decide whether to remove the child from the proposed adoptive home based on the welfare of the child (see, Domestic Relations Law § 116 [2]). The court articulated the conflict it faced between the fact that petitioners appeared to love the child and provide her with the necessities of life and the fact that petitioners evinced "a character totally devoid of any understanding for the accepted norms relating to honesty and integrity in our society." The court concluded that the "deficiency with respect to petitioners' character so far outweighs the petitioners' care for the child to date that it is not in the best interest of the child to proceed to finalize this adoption."

The court stated that it was using the term "home" in a broad sense, not limited to the physical plant itself, and concluded that the adoptive home "is clearly and drastically below commonly accepted standards for adoptive placement" and that "the child's development into normally adjusted adulthood appears to be seriously endangered", a criterion that the majority finds appropriate (see, Matter of Infant H, 69 Misc 2d 304, 309). Because this was a private placement adoption there was no agency already involved, but the court took judicial notice that appropriate agencies were available to insure the child's future placement.

The majority purports to reverse on the law as well as the facts, based on its one additional finding that the adoptive home is "totally adequate" (at 969), contrary to the Surrogate's finding. This is not a finding of fact; it is a legal conclusion based on the undisputed evidentiary facts, including, in the majority's words (at 969), the "demonstrated character defects" of the petitioners.

The majority is holding as a matter of law that the trial court erred in finding that petitioners' character defects outweighed good physical care, love and affection. It acknowledges that the trial court may consider whether the petitioners will be capable of guiding the child to healthy adulthood, as well as the appropriateness of care already rendered to the

child, but faults the Surrogate for the weight given the competing considerations. As the court in *Matter of Infant H (supra,* at 313) noted, many maladjusted older children were healthy, normal infants, and "it is petitioner's 'lifetime assignment' to the parental role for Baby H that the court must consider." I do not agree that the Surrogate erred as a matter of law in weighing these factors.

Furthermore, the majority in two respects misstates the legal standard to be applied when reviewing a petition for adoption when it states (at 969) that "respondent failed to establish that petitioners' demonstrated character defects render them incapable of raising a well-adjusted child." First, the burden of proof is not on the respondent, who is the court-appointed Law Guardian. This is not an adversarial proceeding in the traditional sense. The court's obligation is to discern from all the evidence before it whether removal from the home is in the best interest of the child (Domestic Relations Law § 116 [2]). Second, the test is not whether the character defects render petitioners incapable of raising a well-adjusted child; the test, as accurately stated by the majority previously, is whether the child's development into normally adjusted adulthood appears seriously endangered *(Matter of Infant H,* 69 Misc 2d 304, 309, *supra).*

The majority concludes with the statement that the adoption should be approved in spite of petitioners' imperfections, citing *Matter of Donald U.* (105 AD2d 875, *lv dismissed* 64 NY2d 603). However, in *Matter of Donald U.,* the prospective adoptive father's imperfections had last been manifested over 12 years earlier; he had been under the age of 20 when he committed crimes resulting in a criminal record, and later received a general discharge from the Marine Corps after he went AWOL and stole a car at the age of 19. Further, his failure until shortly before the adoption to pay child support for two children from a prior marriage resulted from his former wife's assertion that the children were not his. Here, we have petitioners who the trier of fact found not credible and whose testimony shows no indication of remorse or rehabilitation or even any indication that they understand why dishonesty would trouble those responsible for evaluating their fitness to adopt. Thus, while the majority is correct that perfection in adoptive parents is not required, I cannot agree that the Surrogate erred in finding that the adoptive home "is clearly and drastically below commonly accepted standards for adoptive placement" and that "the child's development into normally adjusted adulthood appears to be seriously endan-

gered", and thus in concluding that the welfare of the child requires that she be removed from petitioners' home. (Appeal from order of Oneida County Surrogate's Court, Ringrose, S.— adoption.) Present—Dillon, P. J., Doerr, Green, Pine and Davis, JJ.