OPINION OF THE COURT
Herbert B. Ray, J.
The petitioners have sought to be certified as qualified adoptive parents by order of this court as the first step toward the private-placement adoption of Mary R. born August 22, 1988 (Domestic Relations Law § 115 [1] [b]). Petitioners alleged in their petition verified December 4, 1991 and filed with the court on December 11, 1991 that they were married on February 16, 1980 and that they have one daughter, Ruth R., who *1010 resides in Alabama. Petitioners also alleged that Ruth R. is the mother of the adoptive child, but that they have custody of the child by Broome County Family Court order, dated August 28, 1989.
Petitioners alleged in paragraph 3 of their petition that they had "not been the subject of an indicated report and are not other persons named in an indicated report” within the meaning of Social Services Law § 412. In paragraph 8 of their petition, they allege Arba R. has not ever been a respondent in a Family Court Act article 10 proceeding, but Rose R. had been "a respondent in a neglect petition 12 years ago in Broome County Family Court wherein 4 of her 6 children were taken away permanently and 2 were temporarily taken away and returned to her after approximately one year * * * No proceedings have been brought against petitioner Rose * * * in the last 12 years.”
On January 15, 1992 the New York State Division of Criminal Justice Services reported to the court that neither petitioner had a criminal record in New York State (22 NYCRR 205.58 [c]).
On March 18, 1992 the State Central Register responded to the court’s inquiry relative to the existence of reports of child abuse or maltreatment on file against either petitioner (Social Services Law § 422; 22 NYCRR 205.58 [c]). The Register reported that each respondent had been named in reports, copies of which were forwarded to the court. On March 24, 1992 the court appointed a Law Guardian to represent Mary R. and ordered a report from the Child Protective Unit of the Broome County Department of Social Services pursuant to Family Court Act § 1034. On June 15, 1992 the court received the report from the Department of Social Services.
During the course of the section 1034 investigation, the child, Mary R., was removed from the R. home following her alleged disclosure that she had been sexually abused by two of her uncles, sons of Rose R., while the child was in the R.s’ custody. The temporary removal order was signed by the court on April 7, 1992 prior to the filing of a Family Court Act article 10 petition by the Department of Social Services under docket No. N-59-92. Action upon the petitioners’ certification petition was held in abeyance pending proceedings under docket No. N-59-92.
On October 13, 1992, the petition filed against Rose and Arba R. by the Department of Social Services on April 10, *1011 1993 under docket No. N-59-92 was dismissed not on the merits. The child was continued in the custody of the Department of Social Services. Thereafter, on January 25, 1993, the Broome County Department of Probation was directed by the court to perform a preplacement investigation pursuant to Domestic Relations Law § 115-d (4). The report was filed with the court on or about February 22, 1993.
On March 5, 1993 and on May 4, 1993 the court heard testimony relative to the petitioners’ application to be certified as qualified to adopt Mary R.
FINDINGS OF FACT
Petitioners Rose R., also known as Rose M. R., and Arba R. are husband and wife, having been married on February 16, 1980. They have lived together since that date. They have one daughter, Ruth R., who is the mother of the child petitioners propose to adopt. The said child has lived with the petitioners since birth, initially together with the child’s mother. The petitioners obtained custody of said child by Broome County Family Court order on August 28, 1989 with the consent of the mother.
The petitioner Arba R. is 71 years of age and the petitioner Rose R. is 48 years of age.
There are at least seven indicated child abuse and neglect reports against Rose R. in addition to an indicated report against both petitioners in April 1992 involving the child herein.
The court took judicial notice of its own prior proceedings involving Rose R. These proceedings were article 10 neglect or abuse proceedings. Docket Nos. N-83, 84 and 85-79 involved the children Ruth H., Penny R. and Jean Marie B. and resulted in a judgment which was suspended on agreement to place the children with Broome County Department of Social Services for one year by order dated December 10, 1979. There is another suspended judgment entered under docket No. N-76-79 involving the child Kathleen H. which order of October 31, 1979 placed custody of the child with Broome County Department of Social Services. There is another case under docket Nos. N-48-77 and N-49-77 involving the children Penny R. and Jean Marie B. wherein the petitioner herein, the mother listed in the petition, and the children were placed under the supervision of the Broome County Department of Social Services pursuant to an adjudication of neglect made by *1012 order dated September 7, 1977. Under docket Nos. N-24-72, N-25-72, N-26-72 and N-27-72 involving the children Harry Edward, Kathleen Ann, Joseph Michael and Ruth H. there was a suspended judgment and custody was given to Broome County Department of Social Services by order dated February 9, 1972. Under docket No. N-153-69 there was a suspended judgment involving the child Kathleen H. in which custody was returned to the petitioner herein, the mother in the petition, under the supervision of the Broome County Department of Social Services. The court also finds that under docket Nos. B-12-81 and B-13-81, involving the children Jean Marie B. and Penny R., that petitions were filed to free the children for adoption and that there was a surrender prior to the trial.
CONCLUSIONS OF LAW
The court is required to consider the reports of the disinterested person, the Division of Criminal Justice Services and the State Central Register as well as "all other relevant and material factors” in determining a petition for certification (Domestic Relations Law § 115-d [6]; 22 NYCRR 205.58 [c]). Until Domestic Relations Law § 115-d was enacted, "natural parents were the sole judges of the fitness of the prospective adoptive parents * * * To implement the legislative purpose [of Domestic Relations Law § 115-d], the focus of attention in [certification] proceedings is two pronged. The evidence and information obtained from the court investigation must establish first that the applicant is a suitable person to adopt a child * * * and the investigation must confirm that there is nothing about the applicant which would be a negative factor affecting their suitability to adopt a particular child or class of children.” (Matter of Anonymous, NYLJ, Jan. 9, 1991, at 28, col 3 [Sur Ct, Nassau County].)
The petitioners filed their affidavit, dated March 31, 1992, with the court to explain their position on certification. The R.s assert that Mrs. R.’s Family Court Act article 10 history is 12 years old, that "the previous problems involving [her] children evolved from disruptive prior marriages” and that "the previous petitions of neglect are based upon factors that no longer exist, that occurred more than twelve years ago and since that time, the petitioner Rose R. has become a socially stable and responsible adult and parent subsequently due to her current marriage and the influence of her current husband.” The petitioners’ position at trial was the same.
*1013 Adoption is defined as "the legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person” (Domestic Relations Law § 110). One of the fundamental responsibilities of a parent is to "help protect [his] child * * * from injury and mistreatment”, to act as protector of his child’s "physical, mental and emotional well-being” (Family Ct Act § 1011). Mrs. R. accepts little or no responsibility for her past failures to adequately care for her own children. She blames her former husbands for the "troubles” she acknowledges that her own children endured. It is clear that because she has failed to accept any personal responsibilities for her children’s miseries that she is presently incapable of acting in a protective way toward any child, including Mary R., for whom she seeks to incur parental responsibility. She would rather turn a blind eye to a danger and then deny fault when trouble comes to pass.
A perfect example of her behavior pattern is provided in Law Guardian’s exhibit 1, Rose R.’s April 14, 1992 statement to police. She acknowledges that her son Joe "has had a past history of sexually abusing young children and he is not supposed to have any contact whatsoever with any young children.” She affirms that she would "never let Joe be alone with Mary R. * * * I would hang up the phone before I would let Joe even near her.” In the same statement, however, she acknowledges both knowing that her son Joe was living with Katie and using Katie as an overnight babysitter for Mary R. on four occasions between December 1991 and January 1992. In effect, she perceived a danger to her child, but turned a blind eye to the danger when it suited her purpose. Mrs. R. has had two indicated State reports which related to children in her care and custody in 1979 and 1982, each of whom suffered sexual abuse. She is aware that her own sons, Harry and Joe, have sexually abused young children in the past. Yet even with the lessons of history, she has not learned to act as a protector.
Under the circumstances, the court declines to certify the petitioners as qualified adoptive parents. Their adoption petition is hereby dismissed.