[613 NYS2d 715]

In the Matter of MICHAEL JJ., Appellant.

Third Department, June 2, 1994

APPEARANCES OF COUNSEL

*Friedman & Manning, P. C.,* Delmar *(Stephen L. Molinsek* of counsel), for appellant.

## OPINION OF THE COURT

WHITE, J.

Petitioner, a 44-year-old male, desires to adopt the child of his former tenants, although the child had not yet been born at the time the petition was filed. The issue on this appeal is whether Family Court's denial of petitioner's application pursuant to Domestic Relations Law § 115-d for certification as a qualified adoptive parent was warranted.

Since November 1, 1989 a person, like petitioner, seeking to commence a private-placement adoption must, prior to the submission of a petition for such adoption and prior to any actual transfer of physical custody of the adoptive child, be judicially certified as a qualified adoptive parent pursuant to Domestic Relations Law § 115-d *(see,* Domestic Relations Law § 115 [1] [b]).

Domestic Relations Law § 115-d requires an applicant for certification to file with the court a preplacement investigation report compiled by a disinterested person *(see,* Domestic Relations Law § 115-d [4]). In addition, the court must consider reports from the State-wide central register of child abuse and maltreatment and the Division of Criminal Justice Services (hereinafter DCJS) *(see,* 22 NYCRR 205.58 [c]). Using these reports, the court must determine if the applicant is a suitable person to adopt a child and must confirm that there is nothing about the applicant which would be a negative factor affecting his or her suitability to be an adoptive parent *(see, Matter of Mary R.,* 157 Misc 2d 1009). Of course, the overarching con-

cern is whether the best interest of the child would be served by placement in the home of the adoptive parent *(see, Matter of George L. v Commissioner of Fulton County Dept. of Social Servs.,* 194 AD2d 955, 956).

Here, the preinvestigation report was favorable to petitioner. The DCJS report, however, showed that between 1978 and 1986 petitioner had three convictions for driving while intoxicated, including one felony conviction. As a consequence, Family Court afforded petitioner a hearing to further explore his apparent problem with alcohol.

Testimony was elicited from a relapse prevention specialist who found that petitioner was an alcohol abuser and diagnosed his present condition as alcohol abuse in remission. Based on the fact that petitioner has almost seven years of uninterrupted, long-term sobriety with no craving for alcohol and has handled disappointments well during his period of sobriety, he opined that petitioner's potential for relapse "is very slim to none". The certified alcoholism counselor who evaluated petitioner at Family Court's request concurred in this assessment, as did two other counselors who evaluated petitioner.

Although Family Court acknowledged that petitioner's risk of relapse was small, it found that his certification would not be in the best interest of the prospective adoptive child as it could not ignore the potential harm that could accrue to the child if petitioner drinks and drives. Accordingly, it denied the petition, giving rise to this appeal.

▪ Initially, inasmuch as Family Court's order was ex parte, it is not appealable as of right *(see,* CPLR 5701 [a] [2]). Our consideration of this matter is not foreclosed, however, since we shall treat this appeal as an application by petitioner for review pursuant to CPLR 5704 (a) *(see, Matter of Joint Diseases N. Gen. Hosp. [Dept. of Taxation & Fin.],* 148 AD2d 873, 874-875).

▪ We begin our consideration of the merits by noting that the courts have not demanded perfection in adoptive parents *(see, Matter of Baby Girl W. [Kohn-Preiss],* 151 AD2d 968, *lv denied* 74 NY2d 613; *Matter of Donald U.,* 105 AD2d 875, *lv dismissed* 64 NY2d 603). In *Matter of Donald U. (supra),* the prospective adoptive father had, *inter alia,* a criminal record and a less than honorable discharge from the United States Marine Corps. We nevertheless approved the adoption because those negative factors occurred 12 years prior to the adoption proceeding *(supra,* at 876).

While petitioner's abuse of alcohol is a serious concern, he has been alcohol free since January 1986 and, because he has gained insight into the nature of alcoholism and how it pertains to him, he is unlikely to relapse. Thus, as it is evident that petitioner's problem with alcohol defines his past rather than his present or future life, it should not preclude him from being an adoptive parent.

Although mindful of the concerns expressed by the dissent, they can be best addressed by Family Court during the next stage of the adoption proceeding (see, Domestic Relations Law § 116 [2]), at which point a Law Guardian can be appointed to represent the child and to assist the court in determining the best interest of the infant.

CARDONA, P. J. (concurring in part and dissenting in part). We agree with the majority that the order must be reversed. We would, however, not grant the application based upon this record. In a proceeding of this type, certainly the rights of the proposed adoptive parent must be protected; however, the best interest of the child is, at a minimum, of equal significance. After examining the petition and making some initial inquiries, Family Court correctly determined that a hearing was necessary to decide whether petitioner should be certified as a qualified adoptive parent. The hearing was conducted before the court in much the same manner as a default—only petitioner put in proof. No proof was adduced on behalf of the child, who was not represented. As the record demonstrates in this case, this type of hearing places the court in a very difficult and sensitive position because issues bearing upon the best interest of the child, such as petitioner's alcoholism, his child-rearing qualifications and those of his live-in male companion, cannot be fully explored absent an advocate for the child. Family Court Act § 249 (a) allows Family Court, "on its own motion", to appoint a Law Guardian when the court believes that such an appointment would serve the purposes of the Family Court Act. Certainly, one of the primary purposes of the Family Court Act is to promote a child's best interest. Under the circumstances herein, the court should appoint a Law Guardian who can examine the various witnesses produced by petitioner and call additional witnesses when necessary, and in this way assure that all issues bearing upon the best interest of the child are developed. The child was not given that opportunity in this case.

The majority suggests that a court could appoint a Law

Guardian at a later stage of the adoption proceeding and not during the certification process. We respectfully disagree. As the majority notes, any person seeking to commence a private-placement adoption must, prior to filing an adoption petition and prior to obtaining physical custody of a child, obtain certification as a qualified adoptive parent. The primary purpose of the certification process is to prevent harm to a child by not allowing an unfit person to obtain temporary physical custody of a child pending adoption approval (see, Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 115-d, 1994 Pocket Part, at 133). To effectuate the purpose of the certification statute, a thorough inquiry into fitness must be done at that stage and must precede placement of the child with a prospective adoptive parent.

The entrustment of a child, whether identified or not, to the care of a prospective adoptive parent is no less significant than the determination of custody and, therefore, deserving of the same protections. Both involve a tremendous responsibility and, certainly, there should be no compromises in deciding this most important issue. Once Family Court decided in the instant case that a hearing was necessary before determining the certification application, it is our belief that a Law Guardian should have been appointed and, therefore, we would remit the matter to Family Court for a new hearing.

MERCURE and PETERS, JJ., concur with WHITE, J.; CARDONA, P. J., and WEISS, J., concur in part and dissent in part in a separate opinion by CARDONA, P. J.

Ordered that the order is reversed, on the law and the facts, without costs, and application granted.