■ In the Matter of BRENDAN N., a Neglected Child. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ARTHUR N., Appellant. (Proceeding No. 1.) In the Matter of JANET N. et al., Appellants, v ARTHUR N. et al., Respondents. (Proceeding No. 2.) [898 NYS2d 290]—

Malone Jr., J. Appeals (1) from an order of the Family Court of Columbia County (Nichols, J.), entered November 19, 2008, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10-A, to approve the permanency plan for respondent's child, and (2) from an order of said court, entered November 19, 2008, which dismissed petitioners' application, in proceeding No. 2 pursuant to Family Ct Act article 6, for an order of visitation.

In March 2007, as a result of a domestic violence incident, the Columbia County Department of Social Services (hereinafter DSS) temporarily removed the subject child (born in 2006) on an emergency basis from the care of his mother and respondent

Arthur N. (hereinafter the father). DSS thereafter commenced a neglect proceeding against the parents, alleging, as is relevant here, that the father was in violation of the terms of his probation, continued to use cocaine and marihuana while caring for the child and engaged in domestic violence against the mother in the child's presence. Following a hearing, Family Court made a finding of neglect against the father and mother and, as a result, the child was placed in the custody of DSS. Meanwhile, petitioner Janet N., the child's paternal grandmother, unsuccessfully sought guardianship of the child three times and was also unsuccessful in her application for kinship foster care. Then, in April 2008, the mother was murdered and the father was arrested and charged with her death. The following month, DSS commenced a permanent neglect proceeding against the father, seeking the termination of his parental rights.

In September 2008, DSS commenced proceeding No. 1 against the father seeking Family Court's approval of the child's permanency plan, the goal of which was changed from returning the child to his parents to placement for adoption. Shortly thereafter, the grandmother and petitioner Arthur CC., the paternal grandfather, commenced proceeding No. 2 against the father and DSS seeking visitation with the child. Family Court considered both applications in a combined hearing, at the time of which the father was incarcerated pending trial for the murder of the mother.[1] Following the hearing, Family Court approved the permanency plan of placement for adoption. In addition, the court found that visitation with the grandparents was contrary to the child's best interests and dismissed the visitation petition. The father appeals from Family Court's order in proceeding No. 1 approving the permanency plan and the grandparents appeal from the order in proceeding No. 2 dismissing their visitation petition.

Initially, as the result of the entry of subsequent orders of Family Court, the father's appeal in proceeding No. 1 must be dismissed as moot (see Matter of Andrew L. [Cassi M.], 68 AD3d 1477, 1478 [2009]; Matter of Kila DD., 34 AD3d 1168, 1169 [2006]).[2]

As for the grandparents' appeal in proceeding No. 2, we first

1. The father was subsequently convicted of murder in the second degree for the death of the mother and sentenced to 25 years to life in prison. His appeal of that conviction is currently pending in this Court.

2. In July 2009, Family Court approved another permanency plan submitted by DSS and then, in August 2009, the court adjudicated the child to be permanently neglected and terminated the father's parental rights. Appeals from both orders are currently pending in this Court.

note that to the extent that the grandmother challenges Family Court's denial of her guardianship and kinship foster care applications, those claims are not properly before this Court because the record does not contain a notice of appeal with respect to dismissals of those applications (*see* CPLR 5513, 5515; *Matter of Catherine P.*, 269 AD2d 702, 703 [2000], *lv denied* 95 NY2d 751 [2000]). With respect to the grandparents' remaining contentions, we are not persuaded that Family Court abused its discretion in denying their application for visitation.

The record supports the determination that visitation with his grandparents would not be in the child's best interests.[3] Importantly, at the time of the hearing, the then two-year-old child had spent all but the first few months of his life in the custody of DSS, and the grandparents had not developed a meaningful relationship with the child (*see Matter of Ziarno v Ziarno*, 285 AD2d 793, 794 [2001], *lv denied* 97 NY2d 605 [2001]). Moreover, the grandmother testified at the hearing that she did not believe that the father—her son—had killed or ever abused the child's mother because her son and the mother had always denied the allegations of domestic violence. She admitted that, when a DSS caseworker showed her medical documentation that indicated that the mother's story was inconsistent with her injuries, she told the caseworker that doctors could be wrong and that the mother was prone to accidents. The grandmother admitted that she had paid for the motel room the father shared with the mother after his release from jail, where he had been incarcerated for violating protective orders that had prohibited him from contacting the mother, despite her knowledge that DSS "didn't want them to be together right away." The grandmother explained that she helped finance the arrangement for the mother and the father because the grandfather refused to allow them to stay with him because he felt that "they need[ed] to fend for themselves." Both grandparents admitted to having knowledge that the father was using drugs, but apparently did nothing to intervene. The foregoing indicates that at the time of the grandparents' application, they did not appreciate the seriousness of the domestic violence that resulted in the child's removal from his parents' care, and they demonstrated poor judgment with respect to his well-being. Accordingly, it was not an abuse of discretion for Family Court to determine that visitation with them was not in the child's best interests (*compare Matter of E.S. v P.D.*, 8 NY3d 150, 157-158 [2007]; *Matter of Principato v Lombardi*, 19 AD3d 602, 602-603 [2005]).

---

**3.** The grandparents had automatic standing to seek visitation due to the mother's death (*see* Domestic Relations Law § 72 [1]).

Cardona, P.J., Lahtinen, Stein and Garry, JJ., concur. Ordered that the appeal from the order entered November 19, 2008 in proceeding No. 1 is dismissed, as moot, without costs. Ordered that the order entered November 19, 2008 in proceeding No. 2 is affirmed, without costs.