■ In the Matter of BRENDAN N., a Child Alleged to be Permanently Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ARTHUR N., Appellant. (Proceeding No. 1.) In the Matter of BRENDAN N., a Child Alleged to be Severely Abused. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ARTHUR N., Appellant. (Proceeding No. 2.) In the Matter of JANET N. et al., Appellants, v COLUMBIA

COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 3.) In the Matter of BRENDAN N., a Neglected Child. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ARTHUR N., Appellant. (Proceeding No. 4.) In the Matter of BRENDAN N., an Infant. JANET N. et al., Appellants; ARTHUR N. et al., Respondents. (Proceeding No. 5.) [912 NYS2d 706]—

Malone Jr., J. Appeals (1) from an order of the Family Court of Columbia County (Nichols, J.), entered July 7, 2009, which granted petitioner's application, in proceeding No. 4 pursuant to Family Ct Act article 10-A, to approve the permanency plan for the subject child, (2) from two orders of said court, entered August 20, 2009, which granted petitioner's applications, in proceeding Nos. 1 and 2 pursuant to Social Services Law § 384-b and Family Ct Act article 10, to adjudicate the subject child to be permanently neglected and severely abused, and terminated respondent's parental rights, (3) from an order of said court, entered July 1, 2009, which dismissed petitioners' application, in proceeding No. 3 pursuant to Family Ct Act article 6, for custody of the subject child, and (4) from an order of said court, entered October 22, 2009, which dismissed petitioners' application, in proceeding No. 5 pursuant to Domestic Relations Law article 7, for the adoption of the subject child.

Respondent Arthur N. (hereinafter the father) is the father of the subject child (born in 2006) and petitioners Janet N. and Arthur CC. (hereinafter collectively referred to as the grandparents) are the child's paternal grandparents. The child was temporarily removed from his parents' home in March 2007, adjudicated to be neglected and was placed in the custody of the Columbia County Department of Social Services (hereinafter DSS). Thereafter, Janet N. unsuccessfully applied for guardianship of the child and for kinship foster care. In April 2008, the child's mother was murdered and the father was arrested and charged with her death. The grandparents sought visitation with the child, which Family Court determined would not be in the child's best interest, citing, among other reasons, the fact that the grandparents did not believe that their son had harmed the child's mother.[1]

In May 2008, DSS commenced the first of these five proceed-

---

1. Upon a prior appeal, this Court affirmed the order dismissing the grandparents' petition seeking visitation with the child (*Matter of Brendan N. [Arthur N.]*, 72 AD3d 1138 [2010], *lv dismissed* 14 NY3d 934 [2010], *lv denied* 15 NY3d 701 [2010]).

ings, alleging that the father had permanently neglected the child and sought the termination of his parental rights. In January 2009, DSS commenced proceeding No. 2, alleging that the father had severely abused the child by virtue of killing the child's mother, and again sought the termination of his parental rights.[2] A few days later, the grandparents filed a petition seeking custody of the child (proceeding No. 3), which Family Court dismissed, without prejudice, citing the grandparents' then-pending appeal from the order dismissing their prior visitation petition. The father was then convicted of the crime of murder in the second degree for the death of the mother and was sentenced to 25 years to life in prison.[3] DSS thereafter commenced proceeding No. 4, seeking reapproval of the permanency plan for the child, which was to free him for adoption. The fifth proceeding was commenced by the grandparents to adopt the child.

In July 2009, Family Court reapproved the permanency plan of adoption for the child. The following month, the court determined that the father had permanently neglected and severely abused the child and terminated his parental rights. The court later dismissed the grandparents' petition seeking to adopt the child. The grandparents and the father now appeal.[4]

Initially, as the result of the entry of a subsequent permanency order, the goal of which again was the adoption of the child, the father's appeal in proceeding No. 4 must be dismissed as moot (see Matter of Andrew L. [Cassi M.], 68 AD3d 1477, 1478 [2009]). With respect to the allegations of severe abuse (proceeding No. 2), the father's conviction of murder in the second degree for causing the death of the child's mother satisfies Social Services Law § 384-b (8) (a) (iii).[5] Contrary to the father's contentions, the record contains clear and convincing evidence that, prior to his incarceration, DSS undertook diligent efforts to reunite the father with the child by providing him with, among other things, supervised visitation, referrals to numerous treatment programs, transportation to visitation and programs, and invited him to service plan review meetings (see Social Services Law § 384-b [8] [a] [iv]). Following his incarcera-

---

2. These two proceedings were adjourned by Family Court pending the outcome of the father's criminal trial.

3. The father's appeal of that judgment of conviction is currently pending in this Court.

4. This Court issued an order staying the issuance of any final order of adoption during the pendency of these appeals.

5. We are not persuaded by the father's contention that his pending appeal from the judgment of conviction renders the fact of his conviction inadmissible at the fact-finding hearing.

tion, DSS regularly updated the father as to the child's status and progress so that he could plan for the child's future and offered to assist him in engaging in his court-ordered services.[6]

Having determined that the child was severely abused, Family Court was next required to issue an order of disposition (*see* Social Services Law § 384-b [8] [f]). Given the particular facts of this case, and considering the placement of the child with the same pre-adoptive foster family for the majority of his life, termination of the father's parental rights was in the child's best interest. In light of the above, the father's contentions with respect to the finding that he permanently neglected the child (proceeding No. 1) are academic.

Next, we find no error in Family Court's denial of the father's request to be provided with substitute assigned counsel. "An indigent party's right to assigned counsel under the Family Court Act is not absolute" (*Matter of Petkovsek v Snyder*, 251 AD2d 1088, 1089 [1998] [citation omitted]), and the father's claims that counsel refused to subpoena certain witnesses and raise certain arguments did not constitute good cause necessitating a substitution (*see Matter of Mooney v Mooney*, 243 AD2d 840, 841 [1997]).

As for the grandparents' appeals, at the time their custody petition (proceeding No. 3) was filed, the grandparents' fitness as a custodial resource had already been explored and rejected by DSS, and Family Court had dismissed their prior visitation petition on the basis that contact with them was not in the child's best interest, an order which this Court subsequently affirmed (*Matter of Brendan N. [Arthur N.]*, 72 AD3d 1138 [2010], *lv dismissed* 14 NY3d 934 [2010], *lvs denied* 15 NY3d 701 [2010]). Although Family Court dismissed the custody petition without conducting a hearing, the grandparents testified at the various permanency hearings, and their testimony indicated that they did not believe that their son had murdered or otherwise harmed the child's mother—a belief which they were repeatedly informed was hindering their attempts to visit with and gain custody of the child; yet, Family Court nevertheless directed DSS to continue to investigate the possibility that the grandparents would become fit and willing relatives to assume custody of the child. However, the record indicates that the

---

**6.** Notwithstanding the above, it appears that DSS was not required to demonstrate that it had made diligent efforts to strengthen the parental relationship because Family Court had previously determined that reasonable efforts by DSS to return the child to his home were not necessary when it approved a permanency plan in which the goal was to free the child for adoption (*see* Social Services Law § 384-b [8] [a] [iv]).

grandparents continued to refuse to acknowledge the validity of the judgment convicting their son and, as a result, were not considered by the court to be resources for visitation—much less custody—at the last permanency hearing. Based on the above, which establishes that the grandparents were afforded the right to be heard on the issue, we find that Family Court did not abuse its discretion in dismissing the petition without a hearing.

As for the grandparents' adoption petition (proceeding No. 5), although the child was in the custody of an authorized agency (*see* Domestic Relations Law § 112), the grandparents filed a petition for private placement adoption. Even assuming that the notice of appeal from this order was timely filed,[7] considering that the provisions of Domestic Relations Law article 7 are to be strictly construed (*see Matter of Mazzeo*, 95 AD2d 91, 92 [1983]), it cannot be said that Family Court abused its discretion in dismissing the petition due to procedural defects.

To the extent not specifically addressed herein, the parties' remaining contentions have been considered and found to be unpersuasive.

Mercure, J.P., Kavanagh, Garry and Egan Jr., JJ., concur. Ordered that the order entered July 1, 2009 in proceeding No. 3 is affirmed, without costs. Ordered that the order entered August 20, 2009 in proceeding No. 2 is affirmed, without costs. Ordered that the order entered October 22, 2009 in proceeding No. 5 is affirmed, without costs. Ordered that the appeal from the order entered July 7, 2009 in proceeding No. 4 is dismissed, as moot, without costs. Ordered that the appeal from the order entered August 20, 2009 in proceeding No. 1 is dismissed, as academic, without costs.

---

7. The order dismissing the petition was mailed to the grandparents on October 22, 2009 and their notice of appeal was not filed until December 4, 2009, which is more than 35 days after the date of mailing (*see* Family Ct Act § 1113).