OPINION OF THE COURT
Carol R. Sherman, J.
In this adoption proceeding pursuant to article 7 of the Domestic Relations Law, authorized child care agency Leake and Watts Services, Inc. (Agency), by motion filed June 30, 2011, moves the court to dismiss the private-placement adoption petition filed by Carmen A., pursuant to Domestic Relations Law § 115 (see Family Ct Act § 115 [c]; §§ 641, 642). Petitioner Carmen A. is the maternal aunt of the subject child Y, a foster child legally freed for adoption, who is in the lawful care and custody of the Agency and the Administration for Children’s Services (ACS).
The Agency asserts in its motion that the maternal aunt improperly filed the petition as a private-placement adoption. The Agency takes the position that the only path to the adoption of a foster child such as Y. is an adoption from an authorized agency, and the Agency’s consent to such an adoption is required (Domestic Relations Law § 112 [2] [c]; § 113 [1]). The Agency states that it will not consent to the adoption of the child Y. by the maternal aunt, and, therefore, the court is without jurisdiction to hear the maternal aunt’s petition. The Agency states that the power of the court is limited to finalizing or denying the adoption of Y. pursuant to the agency adoption petition filed by Carol W, the foster mother. The Agency further contends that should the court proceed to hold a hearing as to the adoption petition filed by the maternal aunt, any ruling made by the court would be without force and effect since the court does not have jurisdiction over the maternal aunt’s petition, and only the Agency can determine who may file a petition for adoption of this child.
In the alternative, the Agency moves to dismiss the adoption petition filed by Carmen A., the maternal aunt, as jurisdiction- *670 ally defective in that it lacks the following statutory requirements: the marital status of the maternal aunt, certification of the maternal aunt as a qualified adoptive parent as required by Domestic Relations Law § 115 (1) (b), and compliance with the provisions of Social Services Law § 374-a, the Interstate Compact on the Placement of Children, which sets forth procedures that must be followed should Y. be placed with the maternal aunt, who resides in the state of Florida.
In the affirmation in opposition to the motion filed July 10, 2011, the attorney for the maternal aunt states that the issues before the court are questions of first impression, and that the case law cited by the Agency is not relevant as it applies to competing adoption petitions filed by foster parents, which is not the case here. Further, the maternal aunt has complied with the filing requirements for a private-placement adoption, including the certification requirements set forth in Domestic Relations Law § 115 (1) (b) and § 115-d, and she has completed written submissions required by the Interstate Compact. Therefore, any procedural defects have been cured by subsequent submissions. The attorney for the maternal aunt moves for an evidentiary hearing and the court’s determination as to whether the best interests of the child Y. will be served by adoption by the foster mother or adoption by the maternal aunt.
The Attorney for the Child supports the Agency’s motion to dismiss the maternal aunt’s petition.
It is significant to note that the foster mother, whose adoption petition is before the court, has not filed any response to the motion filed by the Agency.
For reasons set forth below, the court denies the Agency’s motion to dismiss the petition filed by the maternal aunt.
Procedural and Factual Background
Y. was born on February 25, 2006 in Bronx, New York. On June 22, 2006, ACS filed a child neglect petition in Bronx County Family Court based on allegations that the mother failed to provide adequate medical care for the infant and had a prior history of neglect findings as to this infant’s older siblings. The court issued an order removing the child from the mother’s care and remanded the child to ACS for foster care services. On July 10, 2006, ACS removed Y. from the mother’s care and the child *671 physically entered foster care.[1] On July 13, 2006, ACS placed the child in a foster home with the Agency, Leake and Watts Services, Inc., an authorized agency with whom ACS contracts for foster care and adoption services. On August 8, 2006, the Agency placed Y. in the home of nonkinship foster parent Carol W. (foster mother), who has now filed the agency adoption petition in this matter. Y. has remained in this foster mother’s home continuously since August 8, 2006.
On May 8, 2007, the court found, by a preponderance of evidence, that respondent mother had neglected the child and issued a dispositional order placing the child with ACS. At a permanency hearing held January 10, 2008, the court approved a change in the child’s permanency goal from return to parent to adoption. On January 31, 2008, the Agency filed a petition to terminate the parental rights of the mother on the grounds of permanent neglect or abandonment, and sought a finding that there was no man who was entitled to notice of and whose consent was required for the adoption of the child (see Social Services Law § 384-b; Domestic Relations Law §§ 111, 111-a; Family Ct Act §§ 631, 1089).
The fact-finding hearing in the termination of parental rights proceeding commenced January 26, 2009 before Judge Clark Richardson. On September 14, 2009, the case was transferred to this Judge because of Judge Richardson’s reassignment to New York County Family Court. On October 1, 2009, finding no agreement of counsel to settle the case or to permit a continuance of the fact-finding hearing pursuant to the hearing transcripts, this court declared a mistrial and set January 27, 2010 as the date for the new fact-finding hearing.
At the January 27, 2010 fact-finding hearing, the court learned that respondent mother had died on January 26, 2010, and her death abated the proceeding to terminate her parental rights. The court then held a hearing and found that there was no man who was entitled to notice of or whose consent was required for Y.’s adoption (see Domestic Relations Law §§ 111, 111-a). The court directed the Agency to submit a written order of disposition and the mother’s death certificate. On July 6, 2010, the court signed the order granting the Agency and ACS the authority to consent to Y.’s adoption by a “suitable person or persons, subject to the customary approval and order of a *672 court of competent jurisdiction.” On July 7, 2010, the order was certified and entered, and registered with the Office of the County Clerk, Bronx County. The order was served via notice of entry on July 22, 2010 upon the Attorney for the Child, attorney for respondent mother, and ACS. On September 21, 2010, ACS transferred its authority to consent to the adoption of the child Y. to the Agency.
On December 13, 2010, the foster mother executed a written agreement to adopt the child Y. The Agency executed its written consent to the adoption of the child by the foster mother on February 9, 2011. The foster mother filed the adoption petition on February 23, 2011, pursuant to Domestic Relations Law §§ 112 and 113.
During the pendency of the child neglect and termination of parental rights proceedings, 2007 to 2009, the maternal aunt, a resident of the state of Florida, did not appear in court nor did she file a petition for custody of or visitation with the child. On March 1, 2010, after learning of the death of the respondent mother, the maternal aunt filed a petition in the Bronx County Family Court, seeking an order of guardianship of the child Y. The maternal aunt and the Agency appeared in court before a referee on May 7, 2010, and the case was adjourned for completion of service. On August 10, 2010, the Agency, ACS, and the child’s attorney appeared, but neither the maternal aunt nor her attorney appeared. On that date, the Referee dismissed the guardianship petition based on the maternal aunt’s default. On October 12, 2010, the attorney for the maternal aunt moved to vacate the default order and restore the guardianship petition to the court’s calendar on the grounds that the maternal aunt was present in the courthouse on August 10, 2010 but was delayed in gaining entry to the building because of the long line, and the attorney for maternal aunt was engaged in another proceeding. The Referee adjourned the case to November 22, 2010. On November 22, 2010, the Referee denied the application to vacate the default order as to the guardianship petition, finding that the child was legally freed for adoption and the foster mother was pursuing adoption of the child, and therefore guardianship would not provide the child with permanence. The Referee did not hold a hearing as to whether it would be in the best interests of the child to be adopted by the foster mother or the maternal aunt, the issue now before this court. The maternal aunt expressed an interest in adopting the child,, and the Referee informed her that she could file an adoption petition, which she did.
*673 Thus, before the court are competing petitions to adopt the child Y., the agency adoption petition filed February 23, 2011, by the foster mother, and the private-placement petition filed April 26, 2011, by the maternal aunt. The court held conferences with counsel and the parties on May 25, 2011, July 11, 2011 and September 28, 2011, and has instructed both parties to file documentation and to update their petitions.
Judicial Precedents Cited by the Agency Do Not Provide a Basis to Dismiss the Private-Placement Adoption Petition Filed by the Maternal Aunt
The Agency contends that the only path to the adoption of the foster child Y. is an agency adoption pursuant to Domestic Relations Law §§ 112 and 113, and, absent the consent of the Agency, the court cannot consider the adoption petition filed by the maternal aunt. In support of this contention, the Agency primarily relies on the following cases: Matter of D. Children (177 AD2d 393 [1st Dept 1991]); Matter of Ralph (274 AD2d 965 [4th Dept 2000]); Matter of Savon (26 AD3d 821 [4th Dept 2006]); and Matter of Brendan N. (Arthur N.) (72 AD3d 1138 [3d Dept 2010], lv dismissed 14 NY3d 934 [2010], lvs denied 15 NY3d 701 [2010], subsequent appeal 79 AD3d 1175 [3d Dept 2010], lvs denied 16 NY3d 702 [2011], 16 NY3d 735 [2011]).
In Matter of D. Children, the First Department modified a Family Court order that denied a grandmother’s petition for custody of and visitation with her grandchildren. The children were in foster care with an authorized agency, and the court terminated the rights of the parents, legally freeing the children for adoption. The foster/adoptive parent of the children filed an adoption petition, which was pending before the Family Court. The appellate court upheld the Family Court’s dismissal of the grandmother’s petition for custody holding that a relative seeking custody does not have preference over a foster parent who is ready to adopt a foster child. This principle is well-recognized (see Matter of Peter L., 59 NY2d 513, 519 [1983] [holding that the appellate court’s award of custody of a foster child, who was legally freed for adoption, to his grandmother, was in error, and reinstating the Family Court’s order granting adoption of the child by his foster parents]). In fact, in this matter, the maternal aunt originally sought guardianship of Y. (petition G-05005/ 2010). However, the Referee dismissed the petition because the child Y. was legally freed for adoption and the foster mother was pursuing adoption of the child. (Matter of Mary Liza J. v Orange *674 County Dept. of Social Servs., 198 AD2d 350, 352 [2d Dept 1993] [holding that the Family Court’s “granting of custody to the petitioner (a great grandmother) where the foster parents are seeking to adopt, would be inconsistent with the legislative purpose of securing a permanent home for the child” (citations omitted)].)
The principles set forth in the Matter of D. Children underscore the principle that once a foster child is legally freed for adoption, adoption is “the sole and exclusive means to gain care and custody of the child” (Matter of Genoria SS. v Christina TT., 233 AD2d 827, 828 [3d Dept 1996], lv denied 89 NY2d 811 [1997]). Thus, this case does not support the Agency’s proposition that the only path to the adoption of the foster child Y. is an agency adoption (Domestic Relations Law §§ 112, 113), or that a private-placement adoption (Domestic Relations Law § 115) is not a viable alternative for this child. In fact, adoption of the child by the maternal aunt will provide the same permanency for the child as adoption by the foster mother.
In the second case cited by the Agency, Matter of Ralph (274 AD2d 965 [2000]), two sets of foster parents filed competing petitions to adopt a brother and sister, who lived together in the original foster home for several years, and then, upon the recommendation of a physician, the authorized agency transferred the brother to a new foster home. The agency, the Niagara County Department of Social Services, consented to the adoption of the brother by the new foster parent over the original foster parents. The original foster parents filed a petition to adopt the sister. The new foster parent filed a petition to adopt both the brother and sister. The county agency and the competing foster parents consented to the Family Court’s jurisdiction and asked the court to hold a best interests hearing and determine who would best serve the adoption interests of the children. The Fourth Department found that this procedure improperly bypassed administrative procedures and requirements that the original foster parents were required to pursue prior to petitioning the Family Court. The appellate court held that foster parents who dispute an agency decision to remove a child from their care must first exhaust their administrative remedy of a fair hearing (see Social Services Law § 400). If the fair hearing decision is adverse to their interests, the aggrieved foster parents have the right to judicial review pursuant to a special proceeding before the Supreme Court (see CPLR 7804). It is clear that these findings are not applicable to the case *675 before the court. The maternal aunt has never been a foster parent, nor has she applied to be a foster parent or to adopt the child Y. through the Agency. Further, she has never sought any of the foster care or adoption subsidies available to the foster mother. Thus, the procedural rights and remedies outlined by the Fourth Department are not available to the maternal aunt and are not a bar to her filing a private-placement adoption petition.
The third case, Matter of Savon (26 AD3d 821 [2006]), concerned a great-aunt who filed a petition to adopt a foster child without the agency’s consent. The Family Court dismissed the petition as incomplete, finding that it was necessary that the great-aunt either obtain the agency’s consent or challenge the agency’s refusal to give consent by requesting a fair hearing. The Fourth Department did not state whether the great-aunt was a foster parent with the agency, had applied to be a foster parent or had applied to adopt the child through the agency. If the great-aunt was either a foster parent or an adoptive applicant through the authorized agency, she would have standing to file an adoption petition only after she exhausted administrative remedies (see Matter of Alexandria Mary, 227 AD 2d 44, 48 [4th Dept 1996] [finding that a rejected foster/ adoptive parent must seek administrative review of the agency’s decision and subsequent judicial review in a special proceeding as a condition precedent to the filing of the adoption petition]). In the absence of critical facts about the status and standing of the great-aunt and the circumstances under which she pursued adoption of the child, this court does not find Matter of Savon to be persuasive authority in support of the Agency’s contention that the Family Court lacks jurisdiction to hear the petition by the maternal aunt.
The final cases cited by the Agency are related appeals: Matter of Brendan N. (Arthur N.) (72 AD3d 1138 [2010]) and Matter of Brendan N. (Arthur N.) (79 AD3d 1175 [2010]). The subject child, born in 2006, was removed from the care of his parents, adjudicated to be neglected and placed in foster care with the Columbia County Department of Social Services. In 2007, the paternal grandparents applied to be kinship foster parents for the child, and the county agency denied their application. In April 2008, the father was arrested and charged with the murder of the child’s mother. The Family Court approved a change in the permanency goal of the child from return to parent to adoption. The paternal grandparents filed petitions for guardian *676 ship of and/or visitation with the child, which the Family Court dismissed. The grandparents appealed the dismissal of their petitions, but failed to file a notice of appeal for the guardianship petition. The appellate court affirmed the dismissal of the visitation petition finding that the Family Court properly determined that contact between the child and the paternal grandparents was not in the child’s best interests in that the paternal grandparents continued to deny the seriousness of the domestic violence between the parents, including the fact that the father had murdered the mother of the child (Matter of Brendan N., 72 AD3d at 1140).
A subsequent appeal to the Third Department, Matter of Brendan N. (Arthur N.) (79 AD3d 1175 [2010]), addressed the Family Court’s dismissal of a private-placement adoption petition brought by the paternal grandparents. In January 2009, following the father’s conviction on the charge of murder in the second degree, the county agency commenced a proceeding to terminate the father’s parental rights. The Third Department found that the grandparents had applied to the agency and had been explored and rejected as kinship foster parents and could not at this stage seek to adopt the child without the agency’s consent. The facts before this court are markedly different in that the maternal aunt has never applied to the Agency to be a foster parent or to adopt the child, nor has any court made a finding as to whether adoption of the child by the maternal aunt would be in the child’s best interests.
In sum, the judicial precedents cited by the Agency are neither persuasive nor applicable to this proceeding, which involves an adoption petition filed by a relative who has never been a foster parent and who has never applied to the Agency to adopt the child. The Agency has a duty to exercise its statutory powers in the evaluation of foster parents, relatives or other persons who apply directly to the Agency to adopt a child (see Social Services Law § 372-b). However, no judicial precedent supports the Agency’s claim that in the adoption of a foster child through a private-placement adoption proceeding, the consent of the Agency is required. Nor is there authority to support the claim that in an adoption involving a foster child, the adoption court’s review is limited to petitions approved by the Agency. Thus, the Agency’s contention that this court lacks jurisdiction over the maternal aunt’s adoption petition is without basis in judicial precedent and contradicts clear statutory mandates.
*677 The Agency’s Consent to the Adoption of Y. by the Maternal Aunt is Not Required
The Domestic Relations Law provides two routes to adoption: title II, “Adoption from an Authorized Agency,” sections 112 through 114; and title III, “Private-Placement Adoption,” sections 115 through 116. The requirements contained in these sections are similar but are distinct procedurally (see Matter of A., 158 Misc 2d 760 [Fam Ct, NY County 1993]). The private-placement adoption provisions of Domestic Relations Law § 115 do not require the consent or involvement of an authorized agency. In a private-placement adoption, the statute requires the agency with lawful custody of the child to “appear” before the court (Domestic Relations Law § 115 [3]). In addition, the agency must present an affidavit stating how lawful custody of the child was obtained (Domestic Relations Law § 115 [7]). The Agency’s argument that its consent is required imposes a requirement in a private-placement adoption where no statutory requirement exists.
The Agency argues that the court may authorize or deny the adoption of a foster child by the person who is approved and presented by the authorized agency, and other adoptive resources are not eligible to adopt the child unless the agency consents. However, the adoption court may decide to approve or reject an adoption petition, regardless of whether the authorized agency has given or denied its consent (Matter of O’Rourke v Kirby, 54 NY2d 8, 15 [1981]). In Matter of O’Rourke, the Court of Appeals affirmed the decision of the Appellate Division, Second Department, which upheld the trial court’s dismissal of a petition brought by a former foster parent in proceedings before the Supreme Court pursuant to article 78 of the Civil Practice Law and Rules. The former foster parent sought to compel the authorized agency, Suffolk County Department of Social Services, to give consent to the adoption of a foster child by the foster parent who had cared for the child for six years.’ The county agency removed the child from the foster parent’s care and replaced her in a two-parent home for the purposes of adoption, on the basis that the child would be better served by a younger, two-parent family (id. at 12). The Second Department affirmed the trial court’s dismissal of the foster parent’s adoption petition. In reviewing the appellate court’s ruling, the Court of Appeals stated that where an authorized agency has rejected a foster parent as a candidate for adoption, the foster parent must exhaust administrative remedies and then pursue an *678 article 78 proceeding as a condition precedent to the filing of an adoption petition (id. at 14). However, it is important to note that the Court held that the agency’s denial of consent to the adoption of a child does not foreclose the prospective adoptive parent from being heard by the adoption court. The Court of Appeals explained that the adoption court is the “appropriate forum” for the determination of the child’s best interests and persons seeking to adopt have the right to intervene even if the agency has denied their application for adoption:
“Indeed, it is the adoption proceeding, in which the appellant has a right to intervene (Social Services Law, § 383, subd 3), which is the appropriate forum for the ascertainment of the child’s best interests. Of course, in any adoption proceeding, the prime consideration is always the best interests of the child (Domestic Relations Law, §§ 114, 116, subd 2; cf. ‘Doe’ v ‘Roe’, 37 AD2d 433, 435). As appellant has the right to intervene in that proceeding, she will not be foreclosed by the agency’s prior denial of consent (nor by judicial affirmance of such denial) from once again presenting to the adoption court the claim that the child’s best interests mandate adoption by appellant rather than the proposed adoptive parents” (id. at 14-15).
Thus, in this matter, the agency’s consent is not a condition precedent for the filing of the maternal aunt’s petition, and the agency’s denial of consent in this matter does not foreclose the maternal aunt from being heard by the adoption court at a full evidentiary hearing to determine the best interests of the child.
The Agency’s Position is Not Supported by Statutory Mandates Pursuant to Social Services Law § 384-b
Social Services Law § 384-b, the statute governing termination of parental rights proceedings and the commitment of guardianship and custody of foster children by court order, requires, upon entry of an order of disposition, that “the court shall inquire whether any foster parent or parents with whom the child resides, or any relative of the child, or other person, seeks to adopt such child” (Social Services Law § 384-b [11]). If such persons express an intent to adopt the child, “the court shall accept, all such petitions for the adoption of the child, together with an adoption home study, if any, completed by an authorized agency or disinterested person as such term is defined in subdivision three of section one hundred sixteen of *679 the domestic relations law” {id.). The statute mandates that relatives who wish to pursue adoption of a legally freed foster child have a right to be heard and the court is required to accept the relative’s petition. In this matter, the circumstances of the respondent mother’s death abated the termination proceeding and the court did not have an opportunity to hold a dispositional hearing as to persons who had expressed an intent to adopt the child or to accept petitions from persons ready to adopt the child. Therefore, these circumstances further support the need for the court to hold such a hearing and make determinations as to whether the child’s best interests are served by adoption by the foster mother or adoption by the maternal aunt.
Moreover, if the court follows the Agency’s reasoning and dismisses the maternal aunt’s adoption petition, as a matter of law, the child Y. may be left in the limbo of foster care, without an adoptive resource. The adoption of the child by the foster mother is in question. Neither the Agency nor the foster mother has complied fully with the filing of required information and documents set forth in Domestic Relations Law § 112 (2), (2-a), (3) and (5), and Uniform Rules for Family Court (22 NYCRR) § 205.53, in a timely and forthright manner.
In February 2011, the Agency submitted an adoption report of investigation in support of the foster mother’s adoption petition which was limited to information gathered in November 2008. The adoption report was not signed or verified by the preparer or agency official or the foster mother, and it was not prepared in accordance with statutory and regulatory standards.
A two-page verified statement by the agency adoption caseworker, dated February 3, 2011, accompanied the adoption report, and provided cursory and dated information. The court required the Agency and foster mother to timely submit up-to-date information in key areas: the child’s physical health and mental health; the educational status of this child and that of the three adopted children in the home; the foster mother’s health, family composition, income, and employment status; details concerning the household composition and sleeping arrangements; information about the foster mother’s financial arrangements with Cathy B., represented to be her “sister,”[2] who provided the unemployed foster mother with financial support *680 in the amount of $800 per month, who allegedly owned the home in which the foster mother and children resided and made the mortgage payments, and who lived in a basement apartment of the home; and information on how the foster mother used the foster care and adoption subsidies she received each month for the care of Y. and the three adopted children in her home.
Over the next months, the court sent four letters detailing information it required from the Agency and foster mother. In response, the court received three additional home studies, which provided incomplete, contradictory, and specious information, particularly in regard to the foster mother’s finances and expenditures on behalf of the children in her home. Further, the foster mother informed the court that she has never paid any federal, state or local income taxes. The final submission, filed September 19, 2011, contained information more responsive to the court’s requests, however the information contradicted prior information submitted to the court. Complete, verified disclosure of the foster mother’s financial arrangements, use of foster care and adoption subsidies and receipts for expenditures on behalf of the children has still not been made. This court has concerns regarding the integrity and suitability of the foster mother to be an adoptive parent. If the court dismisses the maternal aunt’s petition as urged by the Agency, and then finds that the foster mother is unsuitable as an adoptive resource and dismisses her petition, the child Y. would be left with no adoptive resource or opportunity for permanency.
A Hearing as to Whether it is in the Best Interests of the Child Y. to be Adopted by the Foster Mother or Maternal Aunt is Required
The Agency contends that in dismissing the maternal aunt’s guardianship petition, the Referee made a determination that adoption of the child by the foster mother was in the child’s best interests and further hearings as to the child’s best interests are not required. However, in the guardianship proceeding, the Referee conducted a hearing as to whether the *681 maternal aunt presented a reasonable excuse for her nonappearance on August 10, 2010 and the likelihood that she would have prevailed (see CPLR 5015 [a]). The Referee found that since the child Y. was already legally freed for adoption and the foster mother was pursuing adoption of the child, the status of guardianship with the maternal aunt was inconsistent with Y.’s best interests and statutory mandates for permanency. In fact, she advised the maternal aunt that she could file a petition for adoption. The Referee did not conduct a full evidentiary hearing as to the best interests of the child in relation to adoption nor did she hear specific evidence in regard to the suitability of the foster mother or maternal aunt as a prospective adoptive parent for the child Y.
Due to the abatement of the termination of parental rights proceeding based on the mother’s death, the Family Court never had an opportunity to rule on whether adoption of the child by the foster mother is in the child’s best interests nor to accept petitions from persons who have an interest in adopting the child. It is within this adoption proceeding that the Family Court has the duty and sole discretion to determine whether it is in the child’s best interests to be adopted by the foster mother or the maternal aunt (see Matter of George L. v Commissioner of Fulton County Dept. of Social Servs., 194 AD2d 955, 956 [3d Dept 1993] [holding that “the unassailable and overriding consideration in any adoption proceeding remains the best interest of the child”], citing Domestic Relations Law §§ 114, 116; Matter of Baby Girl W., 151 AD2d 968 [4th Dept 1989], lv denied 74 NY2d 613 [1989]).
In Matter of George L., adoptive parents challenged the adoption of their son’s sister by her foster/adoptive parents who resided in a neighboring county. The Family Court granted the adoption of the girl by her foster parents, who had cared for her for several years. The boy’s adoptive parents sought to vacate the adoption order and adopt the girl. The Third Department upheld the court’s granting of the adoption of the girl by her foster parents, finding that the boy’s parents had presented a “sympathetic case,” but the Family Court had obtained independent forensic evidence and applied the standard of the best interests of the child and, thus, its ruling in favor of the adoption of the girl by her foster parents was fully supported by the record (id. at 957).
In the Matter of Wesley R. (307 AD2d 360 [2d Dept 2003]), the Second Department reversed the Family Court’s ruling at a per *682 manency hearing pursuant to Family Court Act former § 1055-a that denied a relative’s application to adopt a child in foster care. The appellate court remanded the case to the Family Court to further develop the record. The decision made clear that the court must have sufficient evidence, including forensic evidence, prior to making a determination as to the best interests of the child. The court stated,
“The central problem in this case is . . . determining whether this short-term trauma [of separation from the foster parents] would have a lasting impact, and whether it would be more than compensated for by the long-term advantages that the child would experience for the remainder of his life as the result of unification with his brothers and sisters” (id. at 361-362).
In remanding the case to the Family Court, the Second Department directed the court to examine the bond that the four-year-old boy in that case had formed with the foster parents, with whom he had resided since birth, to weigh the potential uncertainty of the adoption of the child by the foster parents, and to assess the impact placement of the child with an aunt and uncle, who had adopted the child’s four older siblings, would have on the child. The Second Department emphasized the need for independent psychological evidence by a forensic expert stating, “[g]iven the unusual facts of this case, a new hearing is warranted in light of the need to obtain further, and most importantly, independent, expert evidence” (id. at 362).
The First Department in Matter of Evelyse Luz S. (62 AD3d 595, 597 [1st Dept 2009]) also concluded that the Family Court, in a dispositional hearing in a termination of parental rights proceeding, must hold a best interests hearing and consider all evidence before making a determination as to the adoption of the child. The appellate court reversed the Family Court’s finding that a child who was freed for adoption should be adopted by her foster mother. The appellate court remanded the case to the Family Court for consideration of the paternal grandmother, as well as the foster mother, as an adoptive resource. The First Department ordered the Family Court to hold a new dispositional hearing to consider independent expert evidence on the psychological best interests of the child in order to determine whether it was in the child’s best interests to be adopted by her foster mother or by her grandmother. Applying the holding in the Matter of Wesley R., the First Department concluded that the Family Court failed to fully consider “whether any short- *683 term ‘trauma’ is outweighed by the potential long-term benefit of the child remaining with her grandmother” (id.). The appellate court stated:
“Furthermore, although it is understandable that following placement in foster care, the child, who is young, became bonded to the foster mother, who admittedly took good care of her and tended to her special needs, this does not undermine the fact that the child has biological relatives, who are capable of caring for her and have consistently expressed a desire that she remain in the grandmother’s care” (id. at 596).
Since a best interests hearing as to the adoption of the child Y. has never been held, these appellate rulings make clear that this court must hold an evidentiary hearing, including independent expert psychological testimony as to the child’s best interests, regarding the impact on the child of potential separation from the foster mother and the placement with the maternal aunt for the purpose of adoption. In the case before this court, an independent psychological assessment can assist the court in a best interests determination by exploring the development and psychological functioning of the child, the child’s attachment to the foster family, the impact on the child of a separation from the foster family, the benefits attendant to the child’s placement with relatives, the dynamics of the child’s relationships, the functioning of the foster family and the maternal aunt’s family, the needs of the child and the ability of each prospective adoptive parent to meet her needs (see generally D.R. v R.R., 25 Misc 3d 1238[A], 2009 NY Slip Op 52481[U] [Fam Ct, NY County 2009]). Therefore, the court directs a best interests hearing and orders a forensic evaluation of the child and the parties.
The Maternal Aunt’s Petition is Not Procedurally Defective and Should Not be Dismissed
As an alternative argument, the Agency states that the maternal aunt’s private-placement adoption petition is procedurally defective and as such must be dismissed. The court finds that the defects alleged by the Agency are procedural errors, which are subject to correction, and are not grounds to dismiss the maternal aunt’s adoption petition.
Domestic Relations Law § 115 (13) requires the petitioner to attach proof of compliance with the provisions of the Interstate *684 Compact on the Placement of Children (Social Services Law § 374-a) when a child is brought into New York State for the purposes of adoptive placement. In this case, the child has the potential of being placed out-of-state, in the state of Florida, to reside with the maternal aunt. The maternal aunt was not required to attach proof of compliance with the Interstate Compact with the filing of the petition pursuant to Domestic Relations Law § 115 (13). However, the mandates of the Interstate Compact must be complied with in this matter, should the court determine that the child’s best interests require placement in the state of Florida with the maternal aunt (see Matter of Child R., 14 Misc 3d 806, 809 [Fam Ct, Queens County 2006], citing Social Services Law § 374-a [1], art III [d]). The court has not made such a determination and the issue of compliance with the Interstate Compact is in abeyance.
In regard to the issue of certification, the maternal aunt filed an application for certification as a qualified adoptive parent on May 24, 2011, after she filed the private-placement petition. The statute requires that the maternal aunt petition for certification as a qualified adoptive parent prior to filing the adoption petition (see Domestic Relations Law § 115 [1] [b]). The purpose of the statute “is to prevent harm to a child by not allowing an unfit person to obtain temporary physical custody of a child pending adoption approval” (Matter of Michael JJ., 200 AD2d 80, 84 [3d Dept 1994] [citations omitted]). In the instant matter, the maternal aunt has complied with the statutory purpose and her request for certification as a qualified adoptive parent is now before the court. In sum, the Agency has not cited any procedural basis that warrants the dismissal of the maternal aunt’s adoption petition. Thus, there is no basis to dismiss the maternal aunt’s petition on the ground of failure to conform to the requirements of Domestic Relations Law § 115 (1) (b).[3]
Each of the adoption petitions before the court has procedural defects and the court has directed each petitioner to file amended papers and complete their submissions forthwith. Upon a determination that each petitioner has established suitability to proceed in this matter, the hearing on the best interests of the child will be scheduled in this matter.
*685 Accordingly, the court denies the Agency’s motion and orders the petitioners to file amended papers and complete their submissions forthwith.

. During the period June 22, 2006 up to July 10, 2006, ACS casework staff were unable to gain entry into the residence of the mother and child to effectuate the removal of the child.

. The original adoption report written in November 2008 made no mention of Cathy B. The addendum to the adoption report dated February 3, 2011 stated that Cathy B. was the foster mother’s “sister.” However, in adoption *680 reports dated May 5 and 12, 2011, the agency stated that the foster mother, “Ms. W,” moved to New York in 1986 to be with her “best friend,” Cathy B., and they bought the home in which they reside together in 1995. The most recent adoption report dated September 6, 2011 stated that Cathy B. was the “half sister” of the foster mother “from her father’s relationship with another woman.”

. The agency also alleged that the maternal aunt’s petition lacked information concerning her marital status. At conference on September 28, 2011, maternal aunt stated that she is now divorced from her husband, and she will submit the required documents to update her adoption petition. Accordingly, the lack of information concerning the maternal aunt’s marital status is not a basis to dismiss the adoption petition.