[952 NYS2d 514]

In the Matter of YARY, an Infant. CAROL W., Respondent, et al., Respondents.

In the Matter of YARY, an Infant. LEAKE & WATTS SERVICES, INC., Appellant; CARMEN A., Respondent, et al., Respondent.

First Department, October 11, 2012

**APPEARANCES OF COUNSEL**

*Rosin Steinhagen Mendel*, New York City (*Douglas H. Reiniger* and *Gail Steinhagen* of counsel), for appellant.

*Warren & Warren, P.C.*, Brooklyn (*Ira L. Eras* of counsel), for Carol W., respondent.

*Andrew J. Baer*, New York City, for Carmen A., respondent.

*Law Offices of Randall S. Carmel, P.C.*, Syosset (*Randall S. Carmel* of counsel), Attorney for the Child.

**OPINION OF THE COURT**

SAXE, J.P.

■ This appeal requires us to consider an issue not previously directly addressed by this Court: When a foster care

agency has guardianship and custody of a child and there is no living parent or other individual with the right to consent to the child's adoption, does the agency's refusal to consent to an adoption by a potentially viable candidate preclude the court from entertaining that individual's adoption petition? Here, the child's biological mother is deceased, the child is in foster care, and respondent foster care agency is the only entity with the legal authority to consent to the child's adoption. Both the child's foster mother and her maternal aunt have filed petitions to adopt the child, but the agency declined to consent to the aunt's proposed adoption of the child. The Family Court was unwilling to dismiss the aunt's adoption petition, and determined that the two competing petitions would be addressed simultaneously. We conclude that the statutory scheme requires us to reverse the order of the Family Court and dismiss the aunt's petition, because in the absence of the agency's consent, the petition is legally insufficient; the court is precluded from permitting her to adopt the child.

Yary was born February 25, 2006. On June 22, 2006, the Administration for Children's Services (ACS) filed a neglect petition alleging that Yary's mother failed to provide her with adequate care and had a prior history of neglecting Yary's older siblings, all of whom had been removed from her care. On July 10, 2006, pursuant to an order of the Family Court, Bronx County, Yary was removed from her mother's care and remanded into foster care in the custody of ACS. On July 13, 2006, ACS placed Yary with respondent foster care agency Leake and Watts Services, which on August 8, 2006 placed her in the home of the foster mother, where the child has remained.

On May 8, 2007, the Family Court issued a dispositional order placing Yary in ACS custody with a permanency goal of reuniting mother and child, but on January 10, 2008, the court changed Yary's permanency goal from reunification to adoption. On January 31, 2008, the agency filed a petition to terminate the mother's parental rights (TPR petition). For a variety of reasons, the fact-finding hearing on the TPR petition had to be repeatedly adjourned and reassigned, and on the day before the rescheduled fact-finding hearing was to be held on January 27, 2010, the mother unexpectedly suffered a heart attack and died. Her death abated the TPR petition, and, since Yary's father had not answered the petition and had never supported Yary or been part of her life, which made his consent to any adoption unnecessary (Domestic Relations Law § 111 [2] [a]), the court

immediately transferred guardianship and custody of the child to the agency. Thereafter, on July 6, 2010, the court issued a written order freeing the child for adoption and granting ACS and the agency the authority to consent to her adoption "by a suitable person or persons, subject to the customary approval and order of a court of competent jurisdiction." ACS transferred its authority to consent to Yary's adoption to the agency on September 21, 2010. On December 13, 2010, the foster mother executed a written agreement with the agency to adopt Yary. The agency executed its written consent to the foster mother's adoption on February 9, 2011, and the foster mother's agency adoption petition was filed with the court pursuant to Domestic Relations Law §§ 112 and 113 on February 23, 2011.

Meanwhile, a few weeks after the mother's death, on March 1, 2010, petitioner Carmen A., Yary's maternal aunt, a Florida resident, filed a petition for guardianship of the child. The aunt and the agency appeared in court on May 7, 2010, but the matter was adjourned for completion of service. On the August 10, 2010 adjourn date, both the aunt and her attorney of record were absent, and the Family Court referee dismissed the aunt's guardianship petition, observing that: the aunt had failed to appear; the foster mother, in whose home Yary had resided since 2006, had "proceeded diligently with plans to adopt"; and since Yary had already been freed for adoption, a guardianship by the aunt would not be in her best interest.

On October 12, 2010, the aunt moved to vacate the default, explaining that she had been present in the courthouse on the previous date, but was late because of the long line to enter the building, and that her attorney had been engaged in another proceeding. The matter was adjourned to November 22, 2010, at which point the court denied the application to vacate the default, finding that since Yary's permanency goal is adoption, and she had been freed for that purpose, guardianship would not be in her best interest, because it would not satisfy that goal. The aunt indicated that she wished to adopt Yary, and the court informed her that she could file an adoption petition. The aunt retained new counsel, and filed her petition for a private placement adoption pursuant to Domestic Relations Law § 115 on April 26, 2011.

Court conferences on both petitions were held with all parties on May 25, July 11, and September 28, 2011. The court initially found that both the foster mother's and the maternal aunt's petitions were missing necessary documentation. Specifically,

the aunt's private adoption petition was filed without the certification that she is a qualified adoptive parent, the Interstate Compact for the Placement of Children approval, an affidavit of marital status, and a written consent from Yary's lawful custodian, i.e., the agency. By May 24, 2011, with the exception of the agency's written consent, the aunt had submitted all of the remaining outstanding documentation or its functional equivalent.

The foster mother's agency adoption petition was originally missing an adoption report signed and notarized by both an agency representative and the foster mother, as well as tax returns needed to determine whether the forensic evaluator could be paid by state funds. In addition, the foster mother had failed to explain the nature of her relationship with the other adult in her home, the two different amounts listed as her mortgage payment, how she was managing funds, and to provide verification of her monthly income.

Agency's Motion to Dismiss

On June 30, 2011, the agency moved to dismiss the aunt's adoption petition, arguing that since the custody and guardianship rights of the child for the purpose of adoption had been transferred to it, the only path for an adoption was through an agency adoption pursuant to Domestic Relations Law §§ 112 and 113, to which the agency must give its consent under Domestic Relations Law § 113 (2). The agency further argued that since, as it stated on the record at the May 25, 2011 court appearance and in an earlier letter to the aunt's counsel, it would not consent to the aunt's adoption, the court was deprived of jurisdiction to hear the aunt's petition, mandating its dismissal.

The Family Court denied the agency's motion to dismiss the aunt's petition, denominated a private placement adoption petition. The court held that the agency's consent was not required for the aunt's private placement adoption of the child, because Domestic Relations Law § 115 (3) and (7) only require the agency with lawful custody of the child to "appear" before the court and provide an affidavit stating how it obtained lawful custody. The court explained that the adoption court is the appropriate forum for determining the child's best interests and that persons seeking to adopt have the right to intervene even if the agency has denied their adoption application (citing *Matter of O'Rourke v Kirby*, 54 NY2d 8, 15 [1981]). Since it has the authority to approve of an adoption by an intervening party who had not received the agency's consent, the court reasoned,

lack of agency consent to the aunt's proposed adoption did not deprive the court of jurisdiction over the aunt's petition.

We reverse. The statutory scheme does not allow for a private placement adoption of the child by her aunt without the agency's consent.

Discussion

Adoption is "solely the creature of, and regulated by, statute," and, consequently, the adoption statutes must be strictly construed (see Matter of Jacob, 86 NY2d 651, 657 [1995], quoting Matter of Eaton, 305 NY 162, 165 [1953]).

> "Adoption in New York may be accomplished either by means of a private transaction between individuals, which is referred to as a 'private-placement' adoption, or it may be arranged between an authorized agency set up for the care, custody, and placement of children and prospective adoptive parents, which is referred to as an authorized-agency adoption" (45 NY Jur 2d, Domestic Relations § 590).

Domestic Relations Law § 111, applicable to both authorized agency adoptions and private placement adoptions, is "the principal statute governing consent requirements in adoption proceedings" (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C111:1 at 86 [2010 ed]; see Zimmerman, Adoption Law: Practice and Procedure in the 21st Century at 19 [NY St Bar Assn 2004]), and it sets forth the entities whose consent to an adoption is necessary. Subdivision (1) (f) specifically requires the consent of "any person or authorized agency having lawful custody of the adoptive child," the category that covers respondent foster care agency, Leake and Watts Services, in this case.

In addition, the portions of Domestic Relations Law article VII covering both adoption from an authorized agency (§§ 112-114) and private placement adoptions (§§ 115-116) contain additional consent provisions. Domestic Relations Law § 112 (2) (c) echoes section 111, specifying that the documents adoptive parents must present to the judge include "the consents required by section one hundred eleven of this article." Section 115-b, denominated "Special provisions relating to consents in private-placement adoptions," contains pages of detailed procedures for the various means by which a birth parent's or guardian's valid consent to giving up their child to proposed adoptive parent(s) may be proved.

The concept of private placement adoption focuses on situations where biological parents, or other individuals who are in lawful custody of the child, agree to turn over custody of the child to intended adoptive parents; in contrast, the framework for authorized agency adoptions applies where it is an agency, rather than a parent, that has been granted custody of the child and the right and obligation to decide whether to consent to a proposed adoption. In the present circumstances, the agency is the only entity having lawful care and custody of the child, and there is no individual in the position of parent or guardian who has the right to consent, or withhold consent, to an adoption of the child. Consequently, we conclude that adoption of the child in this instance must satisfy the provisions of sections 112 through 114, covering authorized agency adoptions, and that the framework for private placements adoptions is not applicable here (see Matter of Brendan N. [Arthur N.], 79 AD3d 1175 [3d Dept 2010], lv denied 16 NY3d 735 [2011] [grandparents' petition for private placement adoption was properly dismissed as defective since the child was in the custody of an authorized agency]).

We reject the aunt's suggestion that the agency's consent is not required because, for private placement adoptions, Domestic Relations Law § 115 (3) only requires that the persons whose consent is required appear before the adoption court, and therefore their failure or refusal to provide consent is inconsequential to the adoption. Not only is section 115 inapplicable to this particular adoption, but subdivision (3) of that section nowhere suggests that the consent of a "person[ ] whose consent is required by section one hundred eleven" may be treated as unnecessary.

Indeed, even if we agreed with the aunt that the statutory framework for private placement adoptions may be applicable here, the consent provisions of Domestic Relations Law § 111 would still control; the statutory provisions concerning both agency adoptions and private placement adoptions explicitly recognize the applicability of the consent provisions of section 111 (see Domestic Relations Law §§ 112 [2] [c]; 115 [3]).

We agree with the essence of the analysis repeatedly employed by the Fourth Department in holding, in situations where an agency has been awarded care and custody of a child, that the agency's refusal to consent to an adoption petition leaves the court without the authority to entertain the petition. In Matter of Savon (26 AD3d 821 [4th Dept 2006]), the subject child was

in the care and custody of the Department of Social Services, and when the child's great aunt sought to adopt her, the agency refused to give its consent to her adoption. The Court held that the agency's refusal to consent left the court without jurisdiction to entertain her adoption petition, explaining that "[a]lthough petitioner may challenge respondent's refusal to consent to the adoption by requesting a fair hearing and may thereafter challenge an adverse ruling . . . by commencing a proceeding pursuant to CPLR article 78," she could not properly proceed with an adoption petition without the agency's consent (*id.* at 822). Similarly, in *Matter of Alexandria Mary* (227 AD2d 44, 46-47 [4th Dept 1996]), the Court dismissed an adoption petition where the agency declined to consent, "subject to the rejected prospective parents' due process rights to seek administrative review of the determination through a fair hearing and subsequent judicial review through a CPLR article 78 proceeding."

The aunt here contends that the Family Court is required to consider the best interests of the child, and that in so doing it must weigh her adoption petition alongside the foster mother's adoption application. The first half of that contention is indisputably correct; the second half is not. The best interests analysis central to consideration of the foster mother's adoption petition may include any relevant information. But, the Family Court has no authority to determine the merits of the aunt's adoption petition in the absence of the agency's consent.

The Family Court's reliance on *Matter of O'Rourke v Kirby* (54 NY2d 8 [1981]) is misplaced. *O'Rourke* does not stand for the proposition that the court has the authority to approve of the adoption of the child by the aunt absent the agency's consent, based on the aunt's intervention in the foster mother's adoption proceeding. In *O'Rourke,* the person whose adoption of the child the agency had declined to consent to had the right to intervene in the adoption proceeding and make her case that adoption by her was in the child's best interest, pursuant to Social Services Law § 383 (3), *because she had been the child's foster parent who had had continuous custody of the child for a period of 12 months or more through the authorized agency,* and therefore was entitled to intervene (*see* 54 NY2d at 14-15). In contrast, here, the aunt has never fostered Yary. In any event, the right to intervene would not eliminate the unwavering requirement of the agency's consent to the proposed adoption.

■ Nor do we agree with the Family Court that Social Services Law § 384-b (11) compels the court to hear and render a

determination on the merits of the aunt's adoption petition irrespective of the agency's consent. That provision requires that upon entry of an order of disposition terminating parental rights and committing the guardianship and custody of a child to a government agency, the court "shall inquire whether any foster parent or . . . any relative of the child . . . seeks to adopt such child," and, if so, "such person or persons may submit, and the court *shall accept*, all such petitions for the adoption of the child" and "shall thereafter establish a schedule for completion of other inquiries and investigations necessary to complete review of the adoption of the child" (emphasis added). Here, however, there is no such order of disposition, because the biological mother died before the hearing on the TPR petition was held; because the petition abated at that time, the agency was immediately granted custody of the child. Moreover, at that point, the maternal aunt had not yet come forward with *any* petition or application regarding the child.

The situation contemplated and provided for in Social Services Law § 384-b (11) is not the situation presented here; the agency was granted custody of the child upon the mother's death and at that time became the only entity with the authority to consent, or refuse to consent, to a proposed adoption of the child. The agency's consent would not automatically confer on the aunt the right to become the child's adoptive parent, but its absence precludes the court from granting her petition.

As the Fourth Department has pointed out, a prospective parent has a remedy for the denial of consent: to request a fair hearing and thereafter challenge an adverse ruling with a CPLR article 78 proceeding (*Matter of Savon*, 26 AD3d at 822; *Matter of Alexandria Mary*, 227 AD2d at 46); as this Court has stated, "implicit in [the agency's] power must be a recognition that such consent cannot be unreasonably withheld" (*see People ex rel. Williams v Windham Child Care*, 55 AD2d 146, 148 [1st Dept 1976]). Here, since the agency has not articulated the basis for its denial in either its motion papers or in its appellate briefs, or challenged the assessment by the Florida authorities that the aunt is a suitable adoptive parent, the record does not permit this Court to assess the reasonableness of the agency's decision or determine whether the agency informed the aunt of her right of review pursuant to the agency's internal administrative procedures (*see* Social Services Law § 372-e [3] [a]).

Finally, we reject the agency's suggestion that the case should be reassigned to a different Family Court judge. The record reflects nothing but evenhanded treatment by the court.

Accordingly, the order of the Family Court, Bronx County (Carol R. Sherman, J.), entered on or about October 28, 2011, which denied respondent agency's motion to dismiss the aunt's petition to adopt the child, over whom the agency has had custody and guardianship since the death of the child's mother, should be reversed, on the law, the motion granted, without costs, and the petition dismissed.

CATTERSON, ACOSTA, DEGRASSE and RICHTER, JJ., concur.

Order, Family Court, Bronx County, entered on or about October 28, 2011, reversed, on the law, the motion granted, without costs, and the petition dismissed.